**Pamela BARBER, Plaintiff,**

and

**Miles Carlsen, Appellant/Cross–Appellee,**

v.

**Jim MILLER, an individual, et al.; Arthur Blank; Imageware Software, Inc., a California corporation; MFO Management Co., a Michigan business organization; Paul Yager; Stewart Dansby; Mark Wooster; Rita Garwood, Defendants–Appellees/Cross–Appellants.**

Nos. 96–55725, 96–55860.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 1997.

Decided June 12, 1998.

Andrew S. Kierstead, Carlsen & Kierstead, Santa Monica, California, for appellant/cross-appellee.

Phyllis E. Andelin, Miller, Mailliard & Culver, L.L.P., San Francisco, California, for appellees/cross-appellants.

Before: CANBY, and THOMPSON, Circuit Judges, and MOLLOY,* District Judge.

CANBY, Circuit Judge:

Attorney Miles Carlsen appeals an award of Rule 11 sanctions against him, while Im-

* The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

ageware cross-appeals the amount of the award and the refusal to give other sanctions. We reverse the award of sanctions, because the motion for sanctions was not served upon Carlsen 21 days before filing, as required by the 1993 amendments to Rule 11, so as to give Carlsen an opportunity to withdraw the complaint without suffering sanctions. *See* Fed.R.Civ.P. 11(c)(1)(A).

## BACKGROUND

Carlsen initially filed in the district court, on behalf of his client Pamela Barber, a forty page complaint against Imageware Software, Inc. *et al.* The complaint alleged eight state law causes of action and two federal claims: patent infringement and a RICO violation. Carlsen concedes that Barber did not own the patent in question; the complaint alleged that she had transferred it to another. Shortly thereafter, Imageware's attorney telephoned Carlsen. That attorney declared that she offered to provide Carlsen with authority indicating that only the owner of a patent has standing to sue for its infringement, and that Carlsen declined to discuss the matter.

Subsequently, Imageware's attorneys requested by letter that Carlsen dismiss the complaint with prejudice, citing a lack of federal jurisdiction and a Mutual General Release between Barber and Imageware that allegedly barred most of the claims. The letter added:

> Please allow this letter to serve as formal notice pursuant to Federal Rule of Civil Procedure 11(c) that, unless the Complaint is dismissed with prejudice forthwith, my clients reserve the right to seek appropriate sanctions, including all fees and costs incurred in defending this matter.

Carlsen replied by letter, demanding that Imageware "stop threatening sanctions." Imageware replied and gave notice that it intended to seek Rule 11 sanctions. It then filed a motion to dismiss which cited authority for the proposition that only the owner of a patent has standing to sue for its infringement. Imageware argued that this rule is so well-settled that sanctions should be imposed

on a complainant that cannot allege ownership of the patent.

Carlsen did not oppose Imageware's motion. Instead, he filed an amended complaint which dropped the RICO claim but added four new state law claims. He now sought federal jurisdiction over twelve state claims on the basis of a single claim for the infringement of a patent that Barber did not own.

At a hearing, the district court commented on Carlsen's "tactical bad faith" and suggested that his was a nuisance suit brought to extract a settlement. On October 16, 1995, the court granted Imageware's motion to dismiss with prejudice.[1] It cited the same lack of standing of which Imageware had complained since the beginning of the litigation. By this point, Imageware, a small company, had incurred $26,488.15 in legal expenses and allegedly had lost much of its anticipated venture capital financing as a result of the lawsuit. The district court's order indicated that the court would retain jurisdiction to consider sanctions.

On December 19, 1995, Imageware informed Carlsen by letter that it would seek sanctions. On January 19, 1996, Imageware both moved for sanctions and served Carlsen with the motion. After a hearing on April 8, 1996, the district court awarded Imageware $2,500 in sanctions against Carlsen. Carlsen appeals the award; Imageware cross-appeals the amount of the award and the denial of its request for sanctions under 28 U.S.C. § 1927 and the court's "inherent authority."

## DISCUSSION

■ We review for an abuse of discretion the award of Rule 11 sanctions and the denial of sanctions under 28 U.S.C. § 1927 and the district court's inherent authority. *Mark Indus. Ltd. v. Sea Captain's Choice, Inc.,* 50 F.3d 730, 732 (9th Cir.1995)(Rule 11); *Salstrom v. Citicorp Credit Servs.,* 74 F.3d 183, 184 (9th Cir.1996) (§ 1927); *Chambers v. NASCO, Inc.,* 501 U.S. 32, 55, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (inherent authority).

1. Carlsen subsequently filed an identical suit in state court, which was dismissed on demurrer.

### The Rule 11 Sanctions

 There is no doubt that Carlsen's patent claim, upon which federal jurisdiction was founded, was not "warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law." *See* Fed.R.Civ.P. 11(b)(2). It is also abundantly clear that Imageware gave Carlsen repeated notice of that deficiency. Unfortunately for Imageware, however, it did not follow the procedure required by Rule 11(c)(1)(A) for an award of sanctions upon its motion. By the time Imageware filed its motion, the offending complaint had long since been dismissed.

Rule 11(c) authorizes the court to award sanctions "subject to the conditions stated below." One of those conditions, part of the 1993 amendments to the Rule, states:

> [A motion for sanctions] shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contentions, allegation, or denial is not withdrawn or appropriately corrected.

Fed.R.Civ.P. § 11(c)(1)(A). The purpose of the amendments is made abundantly clear by the Advisory Committee Notes:

> These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refused to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. Under the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions.

Fed.R.Civ.P. 11; Adv. Comm. Notes, 1993 Amend. Carlsen was not given the opportunity to respond to Imageware's motion by withdrawing his claim, thereby protecting himself totally from sanctions pursuant to that motion. The purpose of the amendment was entirely defeated. An award of sanc-

tions cannot be upheld under those circumstances. *See Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir.1995); *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir.1995).

The district court observed that Imageware had given multiple warnings to Carlsen about the defects of his claim. Those warnings were not motions, however, and the Rule requires service of a motion. That requirement, too, was deliberately imposed, with a recognition of the likelihood of other warnings. As the Advisory Committee stated:

> To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the "safe harbor" period begins to run only upon service of the motion. In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion.

*Id.* It would therefore wrench both the language and purpose of the amendment to the Rule to permit an informal warning to substitute for service of a motion.

The district court stated that observance of the Rule in this case would have been futile, because the offending complaint had already been dismissed. Moreover, the motion was both served and filed on a day that preceded by more than 21 days the deadline for filing papers for the scheduled motion hearing. According to the district court, "Defendants missed complying with the 'safe harbor' provision only by filing their motion with the court too early, not by serving it on Plaintiff too late."

 The purpose of the safe harbor, however, is to give the offending party the opportunity, within 21 days after service of the motion for sanctions, to withdraw the offending pleading *and thereby escape sanctions*. A motion served after the complaint had been dismissed did not give Carlsen that opportunity. As the Advisory Committee noted:

> Given the "safe harbor" provisions discussed below, a party cannot delay serving

its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention).

*Id.* In light of the clear language and intent of the amended Rule, we agree with the Sixth Circuit that "a party cannot wait until after summary judgment to move for sanctions under Rule 11." *Ridder v. City of Springfield,* 109 F.3d 288 (6th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 687, 139 L.Ed.2d 634 (1998).

■ As the Sixth Circuit further observed, the "safe harbor" provision applies only to sanctions imposed upon motion of a party. *Id.* at 297 n. 8. Rule 11 also provides:

> On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

Fed.R.Civ.P. 11(c)(1)(B). Nothing in the Rule or the history of the 1993 amendments prevents the district court from taking this action after judgment. The question might arise, then, whether the district court's retention of jurisdiction in this case after judgment, for purposes of sanctions motions, could be the equivalent of an election by the court to impose sanctions on its own motion. We conclude that it is not the equivalent.

In the first place, the court did not initiate the sanction; Imageware did. The Rule distinguishes between sanctions imposed upon motion of a party and those imposed by show-cause order on the initiative of the court. The distinction is not merely formal. The sanctions in this case were ordered to be paid to Imageware. Rule 11 provides that sanctions may include "an order to pay a penalty into court, or, *if imposed on motion* and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed.R.Civ.P. 11(c)(2) (emphasis added). Thus, if the present sanctions payable to Imageware are considered to be sanctions imposed upon the court's initiative, they are unauthorized. *See* Fed.

R.Civ.P. 11, Adv. Comm. Notes, 1993 Amend. ("The revision provides that a monetary sanction imposed after a court-initiated show cause order be limited to a penalty payable to the court").

■ Moreover, the fact that a district court has exercised its discretion to award sanctions on motion of a party does not necessarily mean that the court would exercise its discretion to impose sanctions on its own motion for the same conduct. *See Hadges,* 48 F.3d at 1329; Fed.R.Civ.P. 11, Adv. Comm. Notes, 1993 Amend. ("Since show cause orders will ordinarily be issued only in situations that are akin to a contempt of court, the rule does not provide a 'safe harbor' to a litigant ... after a show cause order has been issued on the court's own initiative"). We therefore decline to equate the district court's award of sanctions on Imageware's belated motion to sanctions awarded on the court's own initiative. We accordingly reverse the Rule 11 award of sanctions payable to Imageware.[2]

### *Sanctions Under 28 U.S.C. § 1927 or the District Court's Inherent Authority*

■ An award of sanctions under 28 U.S.C. § 1927 or the district court's inherent authority requires a finding of recklessness or bad faith. *See In re Keegan Management Co.,* 78 F.3d 431, 436 (9th Cir.1996); *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). The district court expressly declined to make such findings. The evidence in the record supports the district court's ruling; it certainly shows ignorance or negligence on the part of Carlsen, but does not compel a finding that he was reckless or acted in bad faith. The district court did not abuse its discretion by declining to award sanctions under section 1927 or its inherent authority.

### CONCLUSION

The judgment of the district court awarding Rule 11 sanctions against Carlsen and in favor of Imageware is **REVERSED.** With

---

2. Our conclusion that Imageware is entitled to no Rule 11 sanctions defeats its contention on cross-appeal that the Rule 11 award was insufficient in amount.

respect to the cross-appeal, that part of the district court's judgment that denies sanctions under 28 U.S.C. § 1927 and the court's inherent authority is **AFFIRMED.**

APPEAL REVERSED; CROSS-APPEAL AFFIRMED.