**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. NV-17-1221-BTaL |
| | NV-17-1288 |
| PATMONT MOTOR WERKS, INC. , | (Consolidated Appeals) |
| Debtor. | Bk. No. 3:12-bk-52799-BTB |
| WILLIAM D. MCCANN , | Adv. No. 3:15-ap-05031-BTB |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| JEFFREY WICHOT; PAMELA WICHOT; BARBARA WICHOT, | |
| Appellees. | |

Argued and Submitted on July 27, 2018
at Las Vegas, Nevada

Filed – October 4, 2018

Appeal from the United States Bankruptcy Court
for the District of Nevada

---

[*] This disposition is not appropriate for publication.  Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Bruce T. Beesley, Chief Bankruptcy Judge, Presiding

————————

Appearances:     Appellant William D. McCann argued pro se; Justin Henderson of Lewis Roca Rothgerber LLP argued for appellees Jeffrey Wichot, Pamela Wichot, and Barbara Wichot.

————————

Before:     BRAND, TAYLOR and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Appellant William D. McCann appeals two orders of the bankruptcy court:  (1) the order denying his motion for relief from a prior sanctions order; and (2) the order awarding appellees their attorney's fees incurred defending McCann's motion for relief from the prior sanctions order. We AFFIRM the order denying the motion for relief from the sanctions order and REVERSE the order awarding appellees their attorney's fees.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.     Events prior to the sanctions order

Patmont Motor Werks, Inc. ("Patmont") was in the business of manufacturing personal transportation devices. Steven Patmont ("Steven") was Patmont's president; Hannelore Patmont ("Hannelore"), Steven's wife,

was Patmont's treasurer.[1] McCann had been corporate counsel for Patmont since 1989. Prior to Patmont's bankruptcy filing, a New Jersey state court entered a $27,000,000 default judgment against Patmont and in favor of Jeffrey Wichot for injuries involving one of Patmont's scooters. Barbara Wichot and Pamela Wichot were also parties to the suit.[2] Lewis Roca Rothgerber Christie, LLP ("Lewis Roca") represented the Wichots throughout Patmont's bankruptcy case.

Patmont filed a chapter 11[3] bankruptcy case on December 14, 2012. McCann is not a bankruptcy attorney but was employed as special litigation counsel to represent Patmont in various litigation matters during the case.

Patmont's bankruptcy case was later converted to chapter 7, and a trustee was appointed. Thereafter, the trustee filed an adversary proceeding against Steven and Hannelore, seeking recovery of alleged preferential transfers. McCann represented Steven and Hannelore in that

---

[1] Because Mr. Patmont, Mrs. Patmont and Patmont Motor Werks, Inc. all share the name Patmont, we refer to Mr. Patmont as Steven, Mrs. Patmont as Hannelore, and Patmont Motor Werks, Inc. as Patmont.

[2] We refer to Jeffrey Wichot, Barbara Wichot and Pamela Wichot collectively as the "Wichots."

[3] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

action.

The trustee later settled the preference action with Steven and Hannelore and filed a motion seeking approval of the settlement. The Wichots objected to the settlement motion and moved for a Rule 2004 examination of Steven and Hannelore to investigate their financial condition and determine whether a judgment against them would be collectable. As with the settlement motion, the Rule 2004 motion was filed in the main case. The clerk entered an order in the main case granting the Rule 2004 motion. After the order was entered, McCann filed an objection to the Rule 2004 motion on behalf of Steven and Hannelore in both the main case and the adversary proceeding.

Based on events that occurred at Steven's deposition, the Wichots requested sanctions against McCann and Steven under Civil Rule 30(d)(2) for their alleged misconduct during the deposition. The sanctions request was filed as part of the Wichots' supplemental objection to the trustee's settlement motion, which was being heard in five days. McCann and Steven did not file a written response to the sanctions request before the hearing.

At the April 6, 2016 hearing, the court announced that it would sanction McCann and Steven for misconduct at Steven's deposition and would impose a sanction of $2,500 jointly and severally against them, payable to Lewis Roca on behalf of the Wichots. The court instructed Lewis

4

Roca to prepare the order.

On April 8, 2016, Lewis Roca emailed a proposed sanctions order to McCann at the AOL email address he had on file with the court. McCann responded with objections to the proposed order on April 11, and filed an objection to the proposed sanctions order in the adversary proceeding on April 12. The objections went to the merits of the court's sanctions ruling rather than to the form of order. McCann's AOL email address was listed on the pleading. Lewis Roca filed a response to McCann's objection, a copy of which was emailed to McCann's AOL account.

The bankruptcy court entered the sanctions order against McCann and Steven under Civil Rule 30(d)(2) in the main case on April 20, 2016. McCann was listed on the ECF service list, indicating that a copy of the order was emailed to his AOL account.

**B.    Events leading to the motion for relief from the sanctions order**

Eleven months after entry of the sanctions order, the Wichots moved to set aside two prior sales that had occurred in the main case. In the motion, the Wichots noted that McCann and Steven were in contempt for failing to pay the $2,500 sanction ordered by the court in April 2016.

Thereafter, McCann exchanged emails with Lewis Roca counsel discussing the April 2016 sanctions order. In short, McCann disputed the order's finality for lack of notice. McCann explained that, because he had appeared only in the adversary proceeding, he did not receive ECF notices

of docket entries in the main case, such as the sanctions order, which was docketed only in the main case. McCann also argued (erroneously) that the court issued the $2,500 sanction at a hearing for the adversary proceeding, not the main case. McCann faulted Lewis Roca for filing the proposed sanctions order in the main case, even though, in McCann's mind, the sanction was related to a discovery dispute in the adversary proceeding. McCann accused Lewis Roca of intentionally filing the order in the wrong case so he would not receive notice of it.

The bankruptcy court held a hearing on the Wichots' motion to set aside the sales; McCann appeared as attorney for Steven and Hannelore. The court noted near the end of the hearing that it would not tolerate any discovery misconduct, particularly from McCann's clients, and asked McCann whether he understood that instruction. McCann said he understood. When McCann tried to address the court further, the court instructed the clerk to call for security and told McCann to sit down.

Later that same day, McCann sent (and filed) a letter to Judge Beesley expressing that Judge Beesley had demonstrated "blatant prejudice" against him at the hearing earlier that day, as well as at prior hearings. McCann stated that he was forced to withdraw as counsel for Steven and Hannelore as a result of that conduct. Judge Beesley did not respond to McCann's letter.

////

## C.    Motion for relief from the sanctions order

On June 14, 2017, in the adversary proceeding, McCann (and Steven) filed a Motion to Reconsider, Rescind, or Alter Sanctions Order or Recalendering the Date of Entry Thereof ("Rule 60(b) Motion"). McCann maintained that he never received ECF notice of the April 2016 sanctions order. He claimed he first learned of it in the Wichots' motion to set aside the sales filed in March 2017, where the Wichots stated that he and Steven were in contempt for failing to pay the $2,500 sanction. McCann explained that, because the proposed order was in dispute, he assumed the court would first rule on that issue before entering any sanctions order. McCann stated that he repeatedly reviewed the adversary docket after the April 2016 hearing looking for the court's sanction ruling but never saw one.

Although citing Civil Rule 62, McCann sought relief from the sanctions order under Civil Rule 60(b)(1) and (b)(6). For relief under (b)(1), McCann argued that he and Steven were the victims of mistake; McCann did not get ECF service of the sanctions order and Lewis Roca had failed to serve notice of entry of the sanctions order in violation of Local Rule 9022. McCann made no argument for relief under Civil Rule 60(b)(6), stating only the rule. Attached to McCann's declaration in support were "screen shots" from his email accounts — both his former AOL account and new Gmail account — allegedly showing that no email regarding the sanctions order was received on April 20, 2016.

7

The Wichots opposed the Rule 60(b) Motion and argued that they should be awarded attorney's fees. The Wichots argued that McCann's "mistake" argument lacked merit because he had notice over a year ago that he and Steven had been sanctioned by the court. The Wichots also argued that the Rule 60(b) Motion was untimely as to a claim under (b)(1), having been brought more than one year after the sanctions order was entered, and that McCann had failed to establish any basis for relief under (b)(6).

Neither McCann nor Steven appeared at the Rule 60(b) Motion hearing. However, attorney Justin Townsend appeared in McCann's place. The court did not find credible McCann's assertion that he did not receive a copy of the sanctions order via ECF when it was entered on April 20, 2016; McCann had filed an objection to the Wichots' motion for Rule 2004 examinations of Steven and Hannelore on March 3, 2016, which automatically put him on electronic notice of anything filed in the main case thereafter. The court further noted that McCann had not informed the court of the change in his email address from the AOL account to the Gmail account until June 2, 2017. If McCann was not using the AOL account at the time the sanctions order was entered in April 2016 but rather his Gmail account, as McCann maintained, it was McCann's fault for not notifying the court of the email change and was not a proper basis for relief under Civil Rule 60(b)(1). The court did not address the request for relief under Civil

8

Rule 60(b)(6).

At the end of the oral ruling, the court invited Lewis Roca to file a motion for attorney's fees to be awarded against McCann. As for Townsend's appearance at the hearing, the bankruptcy judge explained the ethical perils of appearing in the case for McCann, warned about probable consequences, and warned Townsend not to appear in his court again. The judge announced that he would be issuing an order to show cause why McCann should not be held in contempt for filing a frivolous motion, for wasting the court's time, and for failing to appear at the Rule 60(b) Motion hearing. The court entered the OSC on July 17, 2017, in the adversary proceeding, setting a hearing for August 15, 2017. For reasons unknown, on August 4, 2017, the court withdrew the OSC and vacated the related hearing.

McCann timely appealed the bankruptcy court's order denying the Rule 60(b) Motion ("Rule 60(b) Order").

**D.      Motion for attorney's fees**

As instructed, Lewis Roca filed its application for attorney's fees on behalf of the Wichots requesting $7,230 in fees incurred for responding to the Rule 60(b) Motion. Lewis Roca requested additional sanctions under the court's inherent authority.

McCann opposed the fee application. He argued that the bankruptcy court lacked jurisdiction to award attorney's fees because the Rule 60(b)

9

Order was on appeal. He further argued that the court's apparent sua sponte sanction under Rule 9011 was barred because (1) the OSC had since been withdrawn, and (2) the OSC was not issued until after the adversary proceeding had been dismissed,[4] which left the court unable to impose monetary sanctions per Rule 9011(2)(B). Finally, McCann argued that he had a right to be represented by Townsend at the Rule 60(b) Motion hearing, and that the court's order for Townsend to never appear in his court again violated his due process rights and prevented him from using counsel of his choice.

In reply, the Wichots disputed McCann's Rule 9011 arguments; the adversary proceeding had been reinstated prior to the OSC, and no OSC was even necessary because they were seeking fees and sanctions under the court's inherent authority, not Rule 9011. The Wichots further argued that McCann was not deprived of counsel of his choice; Townsend said he was not representing McCann for the Rule 60(b) Motion but only appearing in his stead. The Wichots requested an additional $4,125 in fees incurred to respond to McCann's opposition to the fee application.

McCann appeared at the fee application hearing. In support of sanctions under the bankruptcy court's inherent authority, the Wichots

---

[4] The trustee's adversary proceeding against Steven and Hannelore was inadvertently dismissed on April 5, 2017. On the court's motion, that proceeding was reinstated on May 22, 2017.

asked the court to find that McCann had acted with bad faith or willful misconduct when he filed his frivolous Rule 60(b) Motion. McCann again stated that he did not receive notice of the April 2016 sanctions order from either Lewis Roca or the court, which prevented him from timely appealing it, and noted that his objections to the proposed sanctions order were never heard. The court informed McCann that if he wanted his objections to the proposed sanctions order considered, he had to set the matter for hearing. McCann conceded he was not aware that setting a hearing was required.

Upon further argument, the bankruptcy court stated that McCann's lack of understanding of bankruptcy procedure was his own fault, and that his incompetency was causing the Wichots to expend money to fight what the court viewed as a frivolous motion to set aside the sanctions order:  the Rule 60(b) Motion was time-barred and not well-taken because McCann had actual notice of the order. The court declined to award any additional sanctions, but it awarded the Wichots their attorney's fees of $11,355. The court also declined to find "bad faith" given McCann's explanation, but said it would find bad faith if McCann failed to follow proper procedure in the future.

McCann timely appealed the bankruptcy court's order awarding the Wichots their attorney's fees of $11,355 ("Fee Order").

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and

11

157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court abuse its discretion in denying the Rule 60(b) Motion?

2. Did the bankruptcy court abuse its discretion in awarding the Wichots their attorney's fees as a sanction against McCann?

## IV. STANDARDS OF REVIEW

A court's denial of a motion under Civil Rule 60(b) is reviewed for an abuse of discretion. *Lemoge v. United States*, 587 F.3d 1188, 1191-92 (9th Cir. 2009); *Alonso v. Summerville (In re Summerville)*, 361 B.R. 133, 139 (9th Cir. BAP 2007). An order imposing sanctions is also reviewed under an abuse of discretion standard. *Miller v. Cardinale (In re DeVille)*, 361 F.3d 539, 547 (9th Cir. 2004); *Orton v. Hoffman (In re Kayne)*, 453 B.R. 372, 380 (9th Cir. BAP 2011). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## V. DISCUSSION

**A. The bankruptcy court did not abuse its discretion in denying the Rule 60(b) Motion.**

**1. Although the court failed to apply *Pioneer–Briones*, such error was harmless because McCann's request for relief under Civil Rule 60(b)(1) was untimely.**

12

Under Civil Rule 60(b)(1), as incorporated by Rule 9024, a court may relieve a party from a final order upon a finding of excusable neglect. In *Pioneer Investment Services Co. v. Brunswick Associates LP*, 507 U.S. 380, 395 (1993), the Supreme Court held that excusable neglect, for purposes of Rule 9006(b)(1), encompasses an attorney's negligence in complying with a filing deadline.

To determine whether a party's neglect is excusable, courts must apply a four-factor equitable test, examining: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. *Id.*

The Ninth Circuit adopted the *Pioneer* test for Civil Rule 60(b)(1) cases in *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir.1997). Through subsequent decisions, *Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1224-25 (9th Cir. 2000), and *Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004) (*en banc*), the Ninth Circuit has further clarified how courts should apply this test. Courts must "explicitly use the *Pioneer–Briones* framework for analysis of excusable neglect under [Civil] Rule 60(b)(1)[.]" *Lemoge*, 587 F.3d at 1192 (citing *Bateman*, 231 F.3d at 1224). A court's mere failure to cite the *Pioneer–Briones* test will generally not require reversal, but the court must have actually engaged in the equitable analysis those cases mandate. *Lemoge*, 587 F.3d at 1193; *Bateman*, 231 F.3d at 1224.

13

Here, the bankruptcy court neither cited *Pioneer-Briones* nor applied the four-factor test required. Generally, this would require reversal. *See Lemoge*, 587 F.3d at 1192 (holding that district court abused its discretion for not citing to *Pioneer* or *Briones* and for considering only three of the four factors); *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261–62 (9th Cir. 2010) (holding that district court abused its discretion for failing to cite or apply the equitable test under *Pioneer–Briones* and basing its decision solely on whether the reason for delay—the third *Pioneer–Briones* factor—could establish excusable neglect). And McCann's failure to cite *Pioneer* or *Briones* did not relieve the bankruptcy court of its duty to apply the correct legal standard. *See Bateman*, 231 F.3d at 1224 (party's failure to cite *Pioneer* or *Briones* or discuss any of the factors under the equitable test did not relieve district court of its duty to apply the correct legal standard). However, in this case, any error by the bankruptcy court was harmless, because McCann's request for relief was untimely.

A motion under Civil Rule 60(b)(1) must be filed "no more than one year after the entry of the judgment or order or the date of the proceeding." Civil Rule 60(c)(1). The sanctions order was entered on April 20, 2016; McCann filed the Rule 60(b) Motion on June 14, 2017. McCann contends that he never received a copy of the sanctions order because it was entered in the main case, as opposed to the adversary proceeding, and because Lewis Roca failed to file and serve him with a notice of entry of it. McCann

14

argues that, because of these errors, the sanctions order was never made final and therefore his request for relief under Civil Rule 60(b)(1) was timely. In addition, McCann argues that these errors abrogated his right to appeal the sanctions order. McCann's arguments lack merit.

Regardless of whether the sanctions order was docketed in the main case or the adversary proceeding, or the fact that Lewis Roca failed to serve him with notice of entry of the order as required, the ECF service list reflects that McCann was served with a copy of it on April 20, 2016, at his AOL email address. If McCann was no longer using that email address on that date (although he was still apparently using it eight days earlier when he filed his objection to the sanctions order), it was his responsibility to inform the court of any email change. Local Rule 5005(d)(1).[5] And, if he failed to do so, service made to that account was still considered good service. Local Rule 5005(d)(2).[6] The court apparently did not find that

---

[5] Local Rule 5005(d)(1) provides:

> If attorneys change their mailing address or email address, a notice of change of address of attorney must be filed for every case and adversary proceeding for which the attorney is the attorney of record in order to maintain a current mailing matrix. The form is available on the court's website. As a separate requirement, the attorney must also update the court's electronic case filing system. Substitutions of attorney must be obtained for all cases and proceedings for which the attorney will not remain the counsel of record.

[6] Local Rule 5005(d)(2) provides:

(continued...)

McCann's evidence of the "screen shots" from both email accounts showing the absence of any email of the sanctions order sufficiently rebutted the presumption of receipt. Thus, his alleged lack of receipt did not affect the finality of the sanctions order or its appeal time.[7]

Further, because of the court's oral ruling at the April 6 hearing and McCann's receipt of a copy of the proposed sanctions order, he was sufficiently made aware that the filing period for the notice of appeal may be rapidly approaching. And even if not, McCann admitted that he first learned of the sanctions order on March 22, 2017, in the Wichots' motion to set aside the sales, which was prior to the expiration of the one-year filing deadline under Civil Rule 60(c)(1). Therefore, McCann, a very experienced attorney, must also be faulted for waiting until June 2017 to file the Rule 60(b) Motion.

Nonetheless, and what McCann fails to recognize is, Civil Rule 60(c)(1) provides, alternatively, that a motion under Civil Rule 60(b)(1) must be filed within one year "of the date of the proceeding." Assuming the "proceeding" was the April 6, 2016 hearing where the court announced its

---

[6](...continued)
If an attorney fails to update their mailing address or email address as required by this rule, service made to their address of record will be deemed good service, unless the court orders otherwise.

[7] In addition, "failure to receive notice of entry of judgment or order is not an excuse for an untimely appeal because it is the party's affirmative duty to monitor the dockets." *Warrick v. Birdsell (In re Warrick)*, 278 B.R. 182, 187 (9th Cir. BAP 2002).

sanctions ruling, McCann certainly knew on that date that he and his client were being sanctioned $2,500 for discovery misconduct. Thus, even if no order was ever entered, McCann's request for relief under Civil Rule 60(b)(1) had to be filed by no later than one year from April 6, 2016, to be timely.

### 2. McCann's other arguments lack merit.

McCann also requested relief under Civil Rule 60(b)(6), which does not have a one year time limit. However, he failed to articulate any argument before the bankruptcy court for why he was entitled to such relief. Accordingly, because McCann failed to preserve that argument for appeal, we need not address it. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 124 n.29 (2d Cir. 2005) (argument mentioned in one sentence in a trial court brief is insufficiently preserved for appeal).

Next, McCann argues that Judge Beesley demonstrated extreme bias, prejudice and bad will toward him and his client. McCann argues that Judge Beesley should have disclosed that he was a partner at Lewis Roca prior to his becoming a bankruptcy judge in 2011 so McCann could have filed a motion to recuse. McCann fails to cite any relevant authority to support his argument that Judge Beesley should have disclosed that he was employed at Lewis Roca five years prior to the sanctions matter. And McCann's inference that Judge Beesley showed favoritism to his former law firm in this or any other matter lacks any foundation.

17

In any case, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* (emphasis in original). McCann points to no "extrajudicial source" that could have caused Judge Beesley to have any particular bias against him. He also fails to show that Judge Beesley demonstrated such a high degree of favoritism or antagonism as to make fair judgment impossible. While Judge Beesley's strong language with McCann showed an obvious lack of patience and was less than desirable conduct, "[n]ot establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. *Id.* at 555-56. A judge's ordinary efforts at courtroom administration — even a stern and short-tempered judge's ordinary efforts at courtroom administration — remain immune." *Id.* at 556. Despite his annoyance with McCann, Judge Beesley's partiality cannot be reasonably questioned here. While he ruled against McCann on the Rule 60(b) Motion, there was no legal basis upon which to grant it. Further, Judge Beesley carefully listened to McCann's

18

statements at the fee application hearing and ultimately declined to find that McCann had acted in bad faith when filing his Rule 60(b) Motion.

Lastly, McCann attempts to challenge the merits of the sanctions order. However, "[a]n appeal from a denial of a Civil Rule 60(b) motion brings up only the denial of the motion for review, not the merits of the underlying judgment.'" *Briones*, 116 F.3d at 380 (quoting *Floyd v. Laws*, 929 F.2d 1390, 1400 (9th Cir. 1991)). Therefore, we are unable to consider his arguments.

Accordingly, we AFFIRM the bankruptcy court's denial of the Rule 60(b) Motion.

**B.  The bankruptcy court abused its discretion by awarding attorney's fees on this record.**

Before we address the merits of the bankruptcy court's decision to award the Wichots their attorney's fees incurred for defending the Rule 60(b) Motion, we address McCann's arguments regarding the court's jurisdiction and alleged due process violations.

McCann argues that the bankruptcy court lacked jurisdiction to rule on the fee motion because he had appealed the Rule 60(b) Order. McCann is incorrect. The filing of a notice of appeal does not divest the bankruptcy court's jurisdiction to "correct clerical errors, take steps to maintain the status quo, take steps that aid in the appeal, award attorney's fees, impose sanctions, and proceed with matters not involved in the appeal." *Hill &*

*Sandford, LLP v. Mirzai (In re Mirzai)*, 236 B.R. 8, 10 (9th Cir. BAP 1999) (citing *Pyrodyne Corp. v. Pyrotronics Corp.*, 847 F.2d 1398, 1403 (9th Cir. 1988)). Similarly, McCann argues that the bankruptcy court lacked jurisdiction to sanction him under Rule 9011(c)(2)(B) because the adversary proceeding had been dismissed before the July 12, 2017 hearing. First, as we discuss more below, it is not clear that the bankruptcy court imposed sanctions under Rule 9011. In any case, McCann's argument fails because it is factually incorrect. Although the adversary proceeding had been inadvertently dismissed in April 2017, it was reinstated on May 22, 2017, and remains pending.

McCann also argues that Judge Beesley deprived him of his counsel of choice and, hence, violated his due process rights, by prohibiting attorney Townsend from ever appearing in his court again. First, Townsend explicitly stated that he was not appearing as counsel for McCann; he was only appearing in his stead. Second, we do not read Judge Beesley's comments in isolation but in the context of the hearing. Judge Beesley explained to Townsend the ethical perils of appearing in the case, warned about probable consequences, and, consistent with his strong views, warned the attorney not to come back to his courtroom. We acknowledge the problems with the bankruptcy judge's choice of language, but in context, we do not view his remarks as an actual decision to bar the attorney from appearance in the case or from his courtroom. Therefore, we

20

fail to see any violation of McCann's due process rights. And, for the reasons we stated above, we also reject McCann's argument that Judge Beesley should have recused himself from hearing the fee motion.

We now turn to the merits of the Fee Order. The Fee Order is silent as to what authority the bankruptcy court relied upon to award the Wichots their attorney's fees as a sanction against McCann. Essentially, there were three possible bases for sanctions: Rule 9011(the bankruptcy counterpart to Civil Rule 11), § 105, or the court's inherent authority. Sanctions under § 105 are for contempt, and require a showing by clear and convincing evidence of a violation of a specific and definite court order. *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002). Since McCann did not violate any specific court order, contempt sanctions were not available. That leaves sanctions under Rule 9011 or the court's inherent authority.

Rule 9011(b) requires parties and their attorneys to ensure papers filed before a bankruptcy court are "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law" and that "allegations and other factual contentions have evidentiary support . . . ." Rule 9011(b)(2) and (3). Rule 9011(b) incorporates a reasonableness standard which focuses on whether a competent attorney admitted to practice before the involved court could believe in like circumstances that his actions were legally and factually justified. *Shalaby v. Mansdorf (In re Nakhuda)*, 544 B.R. 886, 899 (9th

21

Cir. BAP 2016), *aff'd*, 703 Fed. App'x 621 (9th Cir. 2017) (citing *Zaldivar v. City of L.A.*, 780 F.2d 823, 830-31 (9th Cir. 1986)). A failure to adhere to the rule may result in sanctions. *See* Rule 9011(c). Since the bankruptcy court referred several times to the Rule 60(b) Motion as being "frivolous," it is possible it issued sanctions under Rule 9011. However, at least two problems exist with such a ruling.

Although the Wichots suggested that the court impose sanctions against McCann in their opposition to the Rule 60(b) Motion,[8] the court invited Lewis Roca to file the fee motion for the purpose of sanctioning McCann. Certainly, Lewis Roca did not support its motion with evidence that it complied with the safe-harbor procedure under Rule 9011(c)(1). Therefore, the motion was on the court's initiative. *See* Rule 9011(c)(1)(B).

When assessing sanctions sua sponte under Rule 9011(c)(1)(B), the bankruptcy court is required to issue an order to show cause describing the specific misconduct. Although the court issued an OCS for McCann, for reasons unknown it withdrew the OSC and vacated the related hearing prior to the hearing on the fee motion. That is the first problem. The second problem is the type of sanction the court awarded. Sanctions awarded on the court's own motion may not include shifting of fees. *See* Rule 9011(c)(2);

---

[8] In that document, the Wichots requested attorney's fees under 28 U.S.C. § 1927. Sanctions under that statute are not available in bankruptcy courts in the Ninth Circuit. *Perroton v. Gray (In re Perroton)*, 958 F.2d 889 (9th Cir. 1992); *Determan v. Sandoval (In re Sandoval)*, 186 B.R. 490, 495-96 (9th Cir. BAP 1995).

*Barber v. Miller*, 146 F.3d 707, 711 (9th Cir.1998); *Chase v. Kosmala (In re Loyd)*, 304 B.R. 372, 374 (9th Cir. BAP 2003); *Miller v. Cardinale (In re DeVille)*, 280 B.R. 483, 494 (9th Cir. BAP 2002). *See also Markus v. Gschwend (In re Markus)*, 313 F.3d 1146, 1151 (9th Cir. 2002) ("It is clear that attorneys' fees and expenses incurred as a result of violating Bankruptcy Rule 9011 can be shifted only at the motion of one of the parties, and only after the rule-offending party has been given the benefit of the Rule's 21-day safe harbor."). The fact that the court invited the motion did not render it as one made under Rule 9011(c)(2), because the motion contemplated by Rule 9011(c)(2) is the motion provided for by Rule 9011(c)(1) — i.e., a party's motion. *In re Loyd*, 304 B.R. at 374. Thus, even if the court had not withdrawn the OSC, it could not shift the Wichots' fees to McCann; it could only order a monetary sanction payable to the court or some non-monetary sanction.

Alternatively, the bankruptcy court could have sanctioned McCann under its inherent authority. A bankruptcy court's inherent sanction authority is recognized under § 105(a).[9] *Caldwell v. Unified Capital Corp. (In*

---

[9] Section 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or

(continued...)

*re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir. 1996). Under that authority, the bankruptcy court may sanction a "broad range" of conduct. *Lindblade v. Knupfer (In re Dyer)*, 322 F.3d 1178, 1196 (9th Cir. 2003). Sanctionable conduct includes improper litigation tactics (e.g., delaying or disrupting litigation), bad faith, vexatious or wanton conduct, willful abuses of judicial process, or acting for oppressive reasons. *Fink v. Gomez*, 239 F.3d 989, 991-92 (9th Cir. 2001). In this context, bad faith or willful misconduct consists of something more egregious than mere negligence or recklessness." *In re Dyer*, 322 F.3d at 1196. Inherent power sanctions may be imposed by the court sua sponte and can include an award of attorney's fees. *In re Deville*, 280 B.R. at 495 (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 629-32 (1962) (inherent power to dismiss a case sua sponte ); (*Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765-67 (1980) (inherent power to award fees sua sponte )); § 105(a).

"Before awarding sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (citation omitted); *In re Nakhuda*, 544 B.R. at 899 (specific finding of bad faith must precede any sanction under the court's inherent authority). Here, the bankruptcy court expressly stated that it was

---

[9](...continued)
rules, or to prevent an abuse of process.

24

*not* finding bad faith given McCann's explanations for why he filed the Rule 60(b) Motion. And the court's statement that McCann's incompetence in bankruptcy procedure was costing the Wichots money sounds in negligence, or possibly even recklessness, but not willful misconduct. The Wichots argue that we can find "bad faith" despite the bankruptcy court's reluctance to do so, citing *B.K.B. v. Maui Police Department*, 276 F.3d 1091, 1106-08 (9th Cir. 2002). Even if that were the case, we could find bad faith only if we determine that the bankruptcy court's finding of no bad faith was clearly erroneous. We do not discern any clear error on this record. Therefore, in light of the bankruptcy court's findings, it could not impose sanctions under its inherent authority.

Accordingly, because the court could not impose the sanction of attorney's fees under Rule 9011 given the procedural problems or under its inherent authority given its refusal to find bad faith, it abused its discretion in so doing. Therefore, we must REVERSE the Fee Order.

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM the Rule 60(b) Order and REVERSE the Fee Order.